**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| PRIMARY HEALTH, INC., a Texas corporation, | **CASE NO:** |
| Plaintiff, | |
| v. | |
| STEER HEALTH, INC., a Delaware corporation, | |
| and DOES 1-10, | |
| Defendants. | |

## COMPLAINT

Plaintiff Primary Health, Inc. ("PHI") brings this Complaint against Defendant Steer Health, Inc. ("Steer Health") and Does 1-10 for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; and (ii) trademark infringement and unfair competition under Texas common law. PHI alleges with knowledge concerning its own acts, and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

### THE PARTIES

1.      PHI is a Texas corporation with its principal place of business at One Park Plaza, Nashville, TN 37203.

2.      Defendant Steer Health is a Delaware corporation with its principal place of business at 1101 Cottonwood Lane Suite 205, Irving, TX 75038.

3.      Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants"). Each of the Doe Defendants participated in, ratified, endorsed,

1

and/or was otherwise involved in the acts complained of, and they have liability for such acts.  PHI will further amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

4.      At all relevant times, Steer Health and Doe Defendants (collectively, "Defendants") acted as the principal, agent, and/or representatives of each of the other Defendants.  Any action by one of the Defendants was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

5.      Defendants conduct business throughout the United States, including in the State of Texas, and in this District, using the GET CARE NOW and/or GETCARENOW marks (collectively, the "GETCARENOW Marks").

6.      As fully detailed below, Defendants use the GETCARENOW Marks in a manner that violates PHI's longstanding and strong rights in its trademarks.

## JURISDICTION AND VENUE

7.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over PHI's claims for relief for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over PHI's state law claims because they are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over PHI's state law claims pursuant to 28 U.S.C. § 1367(a) because all of PHI's claims arise out of a common nucleus of operative facts.

8.      This Court has personal jurisdiction over Steer Health because Steer Health resides and maintains its offices in this State and in this District.

9.      This Court also has personal jurisdiction over Defendants because Defendants have: (a) conducted substantial business in the State of Texas and this District by advertising, targeting, offering, selling, and providing their goods/services to residents of this District; (b) derived financial benefits from residents of the State of Texas by doing so; (c) purposefully availed themselves of the privilege of conducting business within the State of Texas; and (d) sought the protection and benefits of the laws of the State of Texas.  In addition, the claims arise from Defendants' activities within and actions targeted at the State of Texas.

10.     Venue in this Court exists under 28 U.S.C. § 1391(b)(1) and (2), as Defendants reside in this District and a substantial part of the events giving rise to PHI's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### PHI and Its Successful CARENOW Brand

11.     Since as early as 1999, PHI has offered healthcare and healthcare-related services through accredited urgent care facilities under the well-known CARENOW trademark and CareNow design mark (the "CARENOW Marks").

12.     PHI also operates a website at *www.carenow.com* where patients and potential patients can find medical information, better understand insurance coverage, find a CARENOW-branded facility, check in online, and pay bills.

13.     Over time, PHI has expanded the services offered under the successful CARENOW Marks.  For example, in or around April 2020, PHI began offering telehealth services under the CARENOW Marks.  Such services were invaluable during the global pandemic that severely restricted patients' access to in-person healthcare.  These services are still critical for many patients today, particularly those with limited mobility.

14.     PHI and its CARENOW brand have garnered numerous industry awards for offering patients consistent, high-quality services.  For example, in 2023 and 2024, the Urgent Care Association recognized certain of PHI's CARENOW medical providers as "Unsung Heroes" and "Rising Stars."    *See  www.urgentcareassociation.org/wp-content/uploads/Awards-News-Release-2024.pdf*; *www.urgentcareassociation.org/2023-urgent-care-foundation-award-winners-announced/.*

15.     Having served patients for over 25 years, PHI has become a trusted source of healthcare-related services.  Today, PHI owns and operates over 220 CARENOW-branded facilities across the United States, with over 50 facilities located in the city of Dallas alone.



(PHI's CARENOW-branded urgent care facility at 2404 McKinney Ave., Dallas, TX 75201, just ten minutes from the courthouse.)

**PHI's Intellectual Property Rights**

16.     PHI owns numerous United States federal registrations for the CARENOW Marks (the "CARENOW Registrations"), as shown below:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| CARENOW | 42: medical services provided at ambulatory health care facilities | 2504541 November 6, 2001 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| CARENOW | 36: financial services, namely, providing patient billing payment and discount bill payment services for medical care<br><br>44: health care; medical services; urgent care medical clinics; providing immunizations, medical testing for diagnostic or treating purposes, medical imaging, and occupational medicine services; providing information regarding healthcare, healthcare treatment, healthcare treatment options, and locations providing healthcare treatment, all of the foregoing accessible by way of computers, mobile phones, hand-held, and other wired and wireless communications devices via the Internet | 6139227<br><br>September 1, 2020 |
| CARENOW | 44: telehealth medical services | 6181754<br><br>October 20, 2020 |
| Care**Now** | 44: Medical services provided at ambulatory health care facilities | 2781631<br><br>November 11, 2003 |
| Care**Now** | 44: Medical services provided at ambulatory health care facilities | 5353145<br><br>December 12, 2017 |

17.     The CARENOW Registrations constitute prima facie evidence that the asserted marks are valid, and that PHI is entitled to exclusive use of these marks in commerce and throughout the United States on the goods and/or services listed in the registrations.

18.     Moreover, PHI's U.S. Reg. Nos. 2504541, 2781631, and 5353145 have become incontestable pursuant to 15 U.S.C. § 1065.    This constitutes conclusive evidence of the registrations' validity, as well as PHI's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and/or services listed in the registrations.

19.     Through PHI's widespread and continuous use of the CARENOW Marks throughout the United States, the CARENOW Marks have acquired extensive goodwill, developed

a high degree of distinctiveness, and become well-known and recognized as identifying goods and/or services that originate from PHI.

### Defendants' Unauthorized Use of the GETCARENOW Marks

20.     PHI learned that Defendants have been using the GETCARENOW Marks to offer a healthcare patient management platform that, among other things, assists patients and providers with patient scheduling and check-in.

21.     Steer Health owns a website at *www.getcarenow.io* where it offers and promotes the GETCARENOW-branded software platform.



(Image taken October 30, 2024 from *www.getcarenow.io*)

22.     Steer Health also owns various social media pages to promote its GETCARENOW-branded goods and/or services, including a LinkedIn page.

23.     The GETCARENOW Marks are identical or nearly identical to the CARENOW Marks and are likely to cause consumer confusion as to the source of the parties' respective goods and/or services.  Specifically, the GETCARENOW Marks combine the words "CARENOW" with the non-distinctive imperative "GET."  The term "CARENOW" is the core, distinctive element of the CARENOW Marks, and is covered by the CARENOW Registrations.

24.     The GETCARENOW Marks are nearly identical to the CARENOW Marks in appearance, sound, and meaning.  The similarity is amplified given that the parties use their respective marks for identical or nearly identical goods and/or services.

25.     For example, Steer Health asserts that its GETCARENOW-branded platform allows patients to schedule appointments and "skip the waiting room at the [Emergency Department] and Urgent Care centers."    *www.getcarenow.io/*.  Steer Health also promotes its GETCARENOW-branded platform as reducing patient wait times and expediting patient check-in.

26.     PHI offers the same and/or highly related services under the CARENOW Marks. For example, PHI's *www.carenow.com* website allows patients to find and check in to CARENOW-branded urgent care centers.

27.     There is a high likelihood that consumers who encounter the GETCARENOW Marks will mistakenly believe that Steer Health and its goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with PHI and its CARENOW Marks.

28.     Such confusion would harm PHI, the senior user of the CARENOW Marks.  PHI is particularly concerned that such consumer confusion could cause significant harm to the reputation and goodwill that PHI has carefully cultivated over the last 25 years.  For example, if Defendants' software were to malfunction and cause patient harm (e.g., by failing to schedule a patient's critical appointment), PHI is concerned that consumers would associate the failure to PHI and its well-known CARENOW Marks.  PHI's concern is heightened because both PHI and Steer Health operate in the highly-regulated healthcare industry.  Thus, negative consumer confusion could have disastrous reputational and financial consequences.

29.    Moreover, Defendants will reap the benefits of PHI's reputation and goodwill based on this consumer confusion.

30.    PHI's concerns of consumer confusion are well-founded.  Even the United States Patent and Trademark Office ("USPTO") believes that a likelihood of confusion exists between Steer Health's GETCARENOW Marks and PHI's CARENOW Marks.

31.    When Steer Health applied to register its GET CARE NOW mark (Serial No. 98/210048), the USPTO refused registration because, among other reasons, the GET CARE NOW mark created a likelihood of confusion with PHI's CARENOW Marks.  In the office action refusing registration, the USPTO examining attorney found that PHI's CARENOW mark "looks and sounds like the terms CARE NOW" in Steer Health's GET CARE NOW mark.  Moreover, the examining attorney noted that the additional term "GET . . . does not obviate the overall similarity of the marks."  Indeed, the examining attorney noted that an additional term like "GET" can "increase the similarity between the compared marks where, as in the present case, the dominant portion of the marks is the same."

32.    Faced with PHI's superior trademark rights, Steer Health admitted defeat.  It did not even respond to the USPTO's refusal to register the GET CARE NOW mark.  Shortly after the USPTO refused registration of the GET CARE NOW mark, Steer Health's trademark application went abandoned.  However, Steer Health persists in using its confusingly similar GETCARENOW Marks.

33.    PHI attempted to reconcile its concerns with Defendants.  On July 22, 2024, PHI sent Steer Health a letter demanding that it cease use of the GETCARENOW Marks.  On September 25, 2024, PHI again reiterated its demand that Steer Health cease its use of the

infringing GETCARENOW Marks.  However, Defendants have refused to meaningfully engage in negotiations, let alone cease use of their infringing mark.

34.    Given Defendants' failure to respond to PHI's concerns, their continuing use of the GETCARENOW Marks, and their determination to cause consumer confusion, PHI is forced to bring this suit to fully litigate and resolve the trademark issues between the parties.

**PHI Is Harmed By Defendants' Continuing Infringement and Unlawful Conduct**

35.    Defendants' continued use of the confusingly similar GETCARENOW Marks in commerce violates PHI's valuable intellectual property rights in the CARENOW Marks and CARENOW Registrations, and Defendants' knowing, intentional, willful, and malicious use of the GETCARENOW Marks is damaging to PHI and PHI's property.

36.    Defendants have used the GETCARENOW Marks to unfairly usurp and capitalize on the value and goodwill of the CARENOW Marks and CARENOW Registrations.  Defendants are aware of PHI's strong trademark rights and reputation in the marketplace, but nevertheless, use the GETCARENOW Marks to profit from the goodwill associated with the CARENOW Marks and CARENOW Registrations.

37.    Defendants have intentionally and knowingly capitalized off of confusion between the CARENOW Marks and the GETCARENOW Marks, including by providing goods and/or services that are nearly identical to the goods and/or services offered by PHI.

38.    Defendants compete directly with PHI by offering similar goods and/or services, including healthcare-related services.  Because Defendants and PHI are competitors, and consumers have been deceived into purchasing Defendants goods and/or services, Defendants are diverting consumers and business away from PHI.

39.     Indeed, Defendants intended to cause consumer confusion by offering its goods and/or services under the infringing GETCARENOW Marks.  On July 22, 2024, PHI sent Steer Health a letter demanding that it cease use of the GETCARENOW Marks.  Steer Health responded on September 3, 2024, stating that it "would like nothing more than an amicable relationship with [PHI's parent company].  In fact, [PHI's parent company] is Steer Health's number one prospect." Steer Health's statement implicitly concedes both that Steer Health was well aware of PHI and its CARENOW Marks, and that Steer Health offers goods and/or services related to PHI.

40.     Due to Defendants' willful infringement and unlawful conduct, PHI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  PHI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

41.     PHI's interest in protecting its intellectual property rights and its goods and/or services from consumer confusion outweigh any harm to Defendants.  The public interest is best served by granting PHI's requested relief against Defendants.

**FIRST CLAIM FOR RELIEF**

**Federal Trademark Infringement – 15 U.S.C. § 1114**

42.     PHI incorporates by reference the factual allegations set forth above.

43.     PHI owns the CARENOW Marks and CARENOW Registrations.  The trademarks reflected in the CARENOW Registrations are strong and distinctive and designate PHI as the source of all goods and/or services advertised, marketed, sold, or used in connection with the marks reflected in the CARENOW Registrations.  Indeed, at least three of the CARENOW Registrations have become incontestable under 15 U.S.C. §1065.

44.     PHI is the senior user of the CARENOW Marks as it began using the marks in interstate commerce decades before Defendants' first use of the confusingly similar GETCARENOW Marks.

45.     Defendants do not have authorization, license, or permission from PHI to market and sell their goods and/or services under the confusingly similar GETCARENOW Marks, particularly in connection with goods and/or services that are identical to the goods and/or services associated with the CARENOW Marks.

46.     Defendants were aware of the CARENOW Marks as they were on constructive notice based on PHI's numerous federal trademark registrations, as well as on actual notice based on (1) PHI's demands that Defendants cease use of the infringing GETCARENOW Marks prior to filing this lawsuit, and (2) the USPTO's refusal to register the GET CARE NOW mark on the basis of a likelihood of confusion with PHI's registered CARENOW Marks.  Yet, Defendants continue to use their GETCARENOW Marks and have ignored PHI's demands to stop. Defendants' unauthorized use of the confusingly similar GETCARENOW Marks was and is knowing, intentional, and willful.

47.     As a direct and proximate result of Defendants' wrongful conduct, PHI has been and will continue to be damaged.

48.     Defendants' actions therefore constitute trademark infringement.

49.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar GETCARENOW Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm PHI.

50.     Defendants' activities have caused and will continue to cause irreparable harm to PHI, for which it has no adequate remedy at law, because: (i) the CARENOW Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with PHI's goodwill and customer relationships and will continue to substantially harm PHI's reputation as a source of high-quality goods and/or services; and (iii) Defendants' wrongful conduct, and the damages resulting to PHI, are continuing.  Accordingly, PHI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

51.     Pursuant to 15 U.S.C. §1117(a), PHI is entitled to an order: (i) requiring Defendants to account to PHI for any and all profits derived from their infringing actions; and (ii) awarding all damages sustained by PHI that were caused by Defendants' conduct.

52.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), PHI is therefore entitled to an award of treble damages against Defendants.

53.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus PHI is entitled to an award of its attorneys' fees and costs to pursue this action.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

54.     PHI incorporates by reference the factual allegations set forth above.

55.     The CARENOW Marks are strong and distinctive and designate PHI as the source of all goods and/or services advertised, marketed, sold, or used in connection with the marks.  In addition, by virtue of PHI's decades of use of the marks in connection with its goods and/or services, and its extensive marketing, advertising, promotion, and sale of its goods and/or services under the marks, PHI's CARENOW Marks have acquired secondary meaning, whereby the

consuming public of this District, the State of Texas, and the United States associate the CARENOW Marks with a single source of goods and/or services.

56.     PHI is the senior user of the CARENOW Marks as it began using the marks in interstate commerce prior to Defendants' first use of the confusingly similar GETCARENOW Marks.

57.     Defendants were aware of the CARENOW Marks, as they were on constructive notice based on PHI's numerous federal trademark registrations, as well as on actual notice based on (1) PHI's demands that Defendants cease use of the infringing GETCARENOW Marks prior to filing this lawsuit, and (2) the USPTO's refusal to register the GET CARE NOW mark on the basis of a likelihood of confusion with PHI's registered CARENOW Marks.  Yet, Defendants continue to use their GETCARENOW Marks and have ignored PHI's demands to stop. Defendants' unauthorized use of the confusingly similar GETCARENOW Marks was and is knowing, intentional, and willful.

58.     Through their use of the confusingly similar GETCARENOW Marks, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that PHI somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar CARENOW Marks.

59.     In fact, there is no connection, association, or licensing relationship between PHI and Defendants, nor has PHI ever authorized, licensed, or given permission to Defendants to use the confusingly similar GETCARENOW Marks in any manner.

60.     Defendants' use of the confusingly similar GETCARENOW Marks will likely cause confusion as to the origin and authenticity of Defendants' website, social media accounts,

and goods and/or services, and will likely cause others to believe that there is a relationship between Defendants and PHI when there is, in fact, not.

61.    As a direct and proximate result of Defendants' wrongful conduct, PHI has been and will continue to be damaged.

62.    Defendants' actions thus constitute false designation of origin and unfair competition.

63.    Defendants' activities have caused, and will continue to cause, irreparable harm to PHI, for which it has no adequate remedy at law, in that: (i) the CARENOW Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with PHI's goodwill and customer relationships and will substantially harm PHI's reputation as a source of high-quality goods and/or services; and (iii) Defendants' wrongful conduct, and the damages resulting to PHI, are continuing. Accordingly, PHI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

64.    Pursuant to 15 U.S.C. §1117(a), PHI is entitled to an order: (i) requiring Defendants to account to PHI for any and all profits derived from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by PHI that were caused by Defendants' conduct.

65.    Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), PHI is therefore entitled to an award of treble damages against Defendants.

66.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus PHI is entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

## Common Law Trademark Infringement

67.     PHI incorporates by reference the factual allegations set forth above.

68.     The CARENOW Marks are entitled to protection under the common law.  PHI has extensively and continuously promoted and used the CARENOW Marks in the United States, in the State of Texas, and in this District.   Through that extensive and continuous use, the CARENOW Marks have become well-known indicators of the origin and quality of PHI's goods and/or services.  The CARENOW Marks have also acquired substantial secondary meaning in the marketplace, and such secondary meaning was acquired prior to Defendants' use of the confusingly similar GETCARENOW Marks.

69.     Defendants' activities described above, including, for example, use of the confusingly similar GETCARENOW Marks in direct competition with PHI, constitute common law trademark infringement.  Defendants' use of the GETCARENOW Marks constitutes a reproduction, copy, and/or colorable imitation of the CARENOW Marks and is likely to cause consumer confusion as to the origin, sponsorship, or affiliation of Defendants' goods and/or services and PHI's goods and/or services.

70.     Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of PHI's reputation and the substantial goodwill it has built up in the CARENOW Marks.

71.     As a direct and proximate result of Defendants' wrongful conduct, PHI and consumers have been and will continue to be damaged because consumers have been and will continue to be misled to purchase Defendants' inferior goods or services instead of PHI's goods

or services.  By using the GETCARENOW Marks to divert consumers to its own goods and/or services, Defendants have caused PHI to lose patients and revenue.

72.    Unless an injunction is issued enjoining any continuing or future use of the GETCARENOW Marks by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage PHI.  PHI has no adequate remedy at law.  Accordingly, PHI is entitled to an injunction.

73.    PHI is entitled to recover at least PHI's damages, Defendants' profits, punitive damages, costs, and reasonable attorneys' fees, particularly because Defendants have acted willfully.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

74.    PHI incorporates by reference the factual allegations set forth above.

75.    PHI has valid and protectable common law rights in the CARENOW Marks.

76.    PHI is the senior user of the CARENOW Marks.

77.    PHI has expended significant time and expense in developing the CARENOW Marks and the high-quality goods and/or services it offers under the marks.  The CARENOW Marks have been very successful and PHI has developed a substantial reputation and goodwill in the marketplace.

78.    Defendants' use of the confusingly similar GETCARENOW Marks on unauthorized goods and/or services are likely to cause confusion as to the origin of Defendants' goods and/or services and is likely to cause others to believe that there is a relationship between Defendants and PHI.

79.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of PHI's reputation and the substantial goodwill it has built up in the CARENOW Marks.

80.    Through their wrongful conduct, Defendants have misappropriated PHI's efforts and are exploiting the CARENOW Marks and PHI's reputation to market and sell their goods and/or services under the GETCARENOW Marks.  These actions constitute unfair competition.

81.    As a direct and proximate result of Defendants' wrongful conduct, PHI has been and will continue to be damaged.  Defendants have misled and will continue to mislead customers into falsely believing that Defendants' goods and/or services are connected or related to PHI's goods and/or services.  By using the GETCARENOW Marks to divert consumers to its own goods and/or services, Defendants have caused PHI to lose patients and revenue.

82.    Unless an injunction is issued enjoining any continuing or future use of the GETCARENOW Marks by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage PHI.  PHI has no adequate remedy at law.  Accordingly, PHI is entitled to an injunction.

83.    PHI is entitled to recover at least PHI's damages, Defendants' profits, punitive damages, costs, and reasonable attorneys' fees, particularly because Defendants have acted willfully.

## **PRAYER**

WHEREFORE, PHI prays for the following relief:

A.    An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with

them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

    i.    cease all use and never use the GETCARENOW Marks, the CARENOW Marks, or any other mark likely to cause confusion with the CARENOW Marks, including any misspelling or variation of the marks, in, on, or with any goods or services, or in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any goods or services, including on any social media accounts or websites;

    ii.    never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any goods or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with PHI, or are licensed, approved, or authorized in any way by PHI;

    iii.    never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their goods or services, are related to, or authorized or sponsored by, PHI;

    iv.    never unfairly compete with PHI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of goods or services bearing the GETCARENOW Marks or any other mark likely to cause

confusion with the CARENOW Marks, including any misspelling or variation of the marks;

v.    never register any domain name that contains the CARENOW Marks or any misspelling or variation of the marks, or any domain name confusingly similar to the CARENOW Marks;

vi.    transfer to PHI all domain names in the Enjoined Parties' possession, custody, or control that include the terms "CARENOW" or any misspelling or variation thereof, are otherwise confusingly similar to or contain the CARENOW Marks, or were used in connection with the GETCARENOW Marks, including *getcarenow.io*;

vii.    transfer to PHI, disable, or delete any social media accounts or websites that were used to promote the GETCARENOW Marks, including all such accounts or websites in Defendants' possession, custody, or control that include the terms "CARENOW" or any misspelling or variation thereof, or are otherwise confusingly similar to or contain the CARENOW Marks;

viii.    never register or attempt to register any social media account or website that contains the GETCARENOW Mark, the CARENOW Marks, or any misspelling or variation of the marks, or any other social media account or website confusingly similar to the CARENOW Marks;

ix.    voluntarily cancel and/or expressly abandon any and all trademark registrations and applications for the GETCARENOW mark or any variation of that mark; and

x.      never apply for or seek to register the GETCARENOW Marks, the CARENOW Marks, or any other mark likely to cause confusion with the CARENOW Marks, including any misspelling or variation of the marks.

B.      An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties to deliver and destroy within thirty days all prints, advertising, packaging, goods, and other materials bearing the GETCARENOW Marks.

C.      An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve upon PHI's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

D.      To give practical effect to the Court's injunction, an order that the social networking service or entity (e.g., LinkedIn) related to any of the social media accounts subject to this Order shall, within fourteen (14) days of receipt of the Order, transfer, disable, or otherwise cancel those subject accounts at PHI's request if the Enjoined Parties have not already done so.

E.      To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the foregoing domain names shall, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to PHI if the Enjoined Parties have not already done so.

F.      An order finding that, by the acts complained of above, Defendants have infringed PHI's federally registered trademarks in violation of 15 U.S.C. § 1114.

G.      An order finding that, by the acts complained of above, Defendants have engaged in a false designation of origin and false representation of association with PHI in violation of 15 U.S.C. § 1125(a).

H.    An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

I.    An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition.

J.    An order awarding PHI damages as follows:

    i.    Pursuant to 15 U.S.C. § 1117(a), PHI's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling/increase of those damages; and

    ii.    Punitive damages pursuant to Texas common law.

K.    An order pursuant to 15 U.S.C. § 1117(a), finding that this is an exceptional case and awarding PHI its reasonable attorneys' fees and costs.

L.    An order awarding PHI pre-judgment interest.

M.    An order awarding PHI such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PHI demands a trial by jury.

Dated: <u>December 23, 2024</u>                    Respectfully submitted,

<u>/s/ E. Leon Carter</u>
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterarnett.com
Nichol M. John
Texas Bar No. 24133309
njohn@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expy, Suite 500

Dallas, Texas 75206
214-550-8188 Telephone
214-550-8185 Facsimile

Jennifer L. Barry (*pro hac vice* forthcoming)
    (CA Bar, 228066)
Patrick C. Justman (*pro hac vice* forthcoming)
    (CA Bar, 281324)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 / 858.523.5450 Fax
*jennifer.barry@lw.com*
*patrick.justman@lw.com*


**COUNSEL FOR PLAINTIFF**
**Primary Health, Inc.**